IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES J. NICHOLS,

    Petitioner,                            No. CIV S-09-249 FCD CHS P

    vs.

M. EVANS,

    Respondent.              FINDINGS AND RECOMMENDATIONS
_____/

## I. INTRODUCTION

Petitioner James J. Nichols is a state prisoner proceeding pro se with a petition for writ of habeas corpus brought pursuant to 28 U.S.C. §2254. Petitioner is currently serving a sentence of 7 years to life following his 1974 first degree murder conviction in the Alameda County Superior Court. Here, petitioner challenges the execution of his sentence, and specifically, the September 11, 2007 decision of the Board of Parole Hearings that he was not suitable for parole. Petitioner contests the Board's denial of parole on due process grounds. Based on a thorough review of the record and applicable law, it is recommended that the petition be denied. The Board's 2007 decision to deny parole was supported by some evidence in the record and accordingly did not violate petitioner's right to due process of law.

/////

## II. BACKGROUND

The facts of petitioner's commitment offense were summarized by the Board at his 2007 parole suitability hearing:

> On September 5th 1974, prior to 1200 hours, James Nichols left his office in Fremont, California and drove to... the victim's home in Newark. Once Nichols arrived, he waited for the victim to come home for lunch. When she arrived home at approximately 12:15 hours, Nichols and the victim entered the house together. It was later determined that while in the house, Nichols struck the victim in the head several times with a fireplace poker, removed her pantyhose she was wearing, and used them to strangle her to death. Nichols was observed by witnesses leaving the residence at approximately 12:50 hours. It was concluded that Nichols owed the victim several thousand dollars that he had borrowed over a period of time. On September 3rd 1974, Nichols gave the victim a worthless check for $12,000. The victim contacted her daughter when she realized the check was bad. At the crime scene, it was discovered Mrs. Moughon's purse had been pilfered. The check was missing and Nihcols' sunglasses were laid next to the purse.

(Ex. 5 at 13-14.)

Petitioner was convicted by jury of first degree murder and sentenced to a term of 7 years to life in state prison. His minimum eligible parole date passed in 1981. On September 11, 2007, a panel of the Board of Prison Terms ("Board") conducted a hearing to determine petitioner's suitability for parole and concluded that he was not suitable for parole because he would pose an unreasonable risk of danger to society or a threat to public safety if released.

Petitioner challenged the Board's decision in a petition for writ of habeas corpus to the Alameda County Superior Court. The petition was denied on March 25, 2008. Subsequent petitions to the California Court of Appeal, First District, and the California Supreme Court were likewise denied.

## III. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright,* 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

1 *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).
2 This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,
3 the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521
4 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under
5 AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in
6 state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

## IV.  DUE PROCESS

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States Constitution does not, in and of itself, create for prisoners a protected liberty interest in the receipt of a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). Where a state's statutory parole scheme uses mandatory language, however, it "creates a presumption that parole release will be granted" when or unless certain designated findings are made, thereby giving rise to a constitutional liberty interest. *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates*

1  *of Nebraska Penal*, 442 U.S. 1, 12 (1979)).

2  In California, Penal Code section 3041 sets forth the state's legislative standards for determining parole for life-sentenced prisoners such as petitioner.  Subsection (a) provides that "[o]ne year prior to the inmate's minimum eligible parole release date a panel... shall meet with the inmate and shall normally set a parole release date." Cal Penal Code §3041(a). Subsection (b) provides an exception to the regular and early setting of a lifer's term, if the Board determines "that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration..." Cal. Penal Code §3041(b).  California state prisoners who have been sentenced to prison with the possibility of parole have a clearly established, constitutionally protected liberty interest in receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; and *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

3  The full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987).  The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16.

4  Additionally, as a matter of *state* constitutional law, denial of parole to California inmates must be supported by at least "some evidence" demonstrating future dangerousness. *Hayward v. Marshall*, No. 06-55392, slip op. at 34-35 (9th Cir. April 22, 2010) (en banc) (citing *In re Rosenkrantz*, 59 P.3d 174, 210 (Cal. 2002), *In re Lawrence*, 190 P.3d 535, 549 (Cal. 2008), and *In re Shaputis*, 190 P.3d 573, 582 (Cal. 2008)).  The federal Due Process Clause requires, in turn, that California comply with its own quantum of evidence requirement. *See Pearson v. Muntz*, No. 08-55728, slip op. at 5 (9th Cir. May 24, 2010) (per curiam).  A reviewing court such

as this one must "decide whether the California judicial decision approving the... decision rejecting parole was an "unreasonable application" of the California 'some evidence' requirement, or was "based on an unreasonable determination of the facts in light of the evidence." *Hayward v. Marshall*, slip op. at 37.

The analysis of whether some evidence supports denial of parole to a California state inmate is framed by the state's statutes and regulations governing parole suitability determinations. *See Irons*, 505 F.3d at 851. This court "must look to California law to determine the findings that are necessary to deem [a petitioner] unsuitable for parole, and then must review the record to determine whether the state court decision holding that these findings were supported by 'some evidence' [ ] constituted an unreasonable application of the 'some evidence' principle." *Id*.

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers. The regulation is designed to guide the Board's assessment of whether the inmate poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. *In re Lawrence*, 44 Cal.4th 1181, 1214, 1202 (2008). The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. §2402(b). The regulation also lists several specific circumstances which tend to show suitability or unsuitability for parole. 15 Cal. Code Regs. §2402(c)-(d). The overriding concern is public safety and the focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, the proper articulation of the standard of review is not whether some

evidence supports the reasons cited for denying parole, but whether some evidence indicates that the inmate's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). In other words, there must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227.

At petitioner's 2007 parole suitability hearing, a panel of the Board considered both positive and negative factors bearing on petitioner's suitability for parole. The Board commended petitioner for working a job continuously and receiving above average work reports in the canteen. The Board noted that petitioner had been free of serious discipline since 1993, and that the most recent psychological evaluator had opined petitioner posed a low risk for future violence.

Ultimately however, the Board relied on the following factors, at a minimum,[1] in concluding that petitioner was not suitable for parole: (1) the circumstances of his commitment offense; (2) insufficient programming in prison, including self help, and failure to complete a vocation; (3) misconduct in prison; and (4) petitioner's past and present attitude toward the offense.

Under the applicable state regulations, the circumstances of a prisoner's commitment offense tend to show unsuitability for parole for where the offense was committed "in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. §2402(c)(1). Here, the Board found that petitioner's offense was especially heinous, atrocious, or cruel because it was carried out in a dispassionate and calculated manner (§2402(c)(1)(B)); because the victim was abused, defiled or mutilated (§2402(c)(1)(C); and because it demonstrated an exceptionally callous disregard for human suffering (§2402(c)(1)(D)).

---

[1] One of the eight pages setting forth the Board's decision is missing from the copy of the transcript before this court. This omission is apparently of no consequence in view of the other valid findings which are before the court.

In order for the facts of petitioner's commitment offense to constitute a valid reason to deny parole, there must be some rational nexus between those facts and the ultimate conclusion that he continues to be a threat to public safety. *In re Lawrence*, 44 Cal.4th at 1214, 1227 ("the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or [ ] current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety") (emphasis in original). The relevant inquiry is an individualized one: "whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense." *In re Lawrence*, 44 Cal.4th at 1221. The passage of time and attendant changes in the inmate's psychological or mental attitude are relevant considerations. *Id*.

Petitioner's offense occurred more than 30 years prior to the 2007 parole suitability determination at issue. Nevertheless, other factors relied upon by the Board demonstrate a sufficient nexus between petitioner's 1974 offense and the ultimate conclusion that he still posed a risk of danger or threat to the public at the time of his hearing in 2007. These other factors also independently demonstrate some evidence in the record to support the Board's conclusion that petitioner was not suitable for parole.

The Board discussed at length circumstances relating to petitioner's institutional behavior. Institutional behavior is a regulatory factor tending to demonstrate unsuitability for parole where "the prisoner has engaged in serious misconduct in prison or jail." 15 Cal. Code Regs. §2402(c)(6). Conversely, institutional behavior tends to demonstrate an inmate's suitability for parole where "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." 15 Cal. Code Regs. §2402(d)(9).

7

Petitioner's disciplinary record included nine 115 disciplinary reports including one for "conduct conducive to violence" received in 1991. Most recently, he was counseled in 2005 for possession of contraband. Petitioner had also been counseled or disciplined for possession of narcotic paraphernalia, refusal to submit to a urinary sample, disobeying orders, and falsifying documents, among other offenses. His most recent 115 disciplinary report was issued in 1993 for failure to participate in a vocational class.

While there was no recent, serious misconduct demonstrating petitioner's unsuitability for parole, his disciplinary record was "not completely pacific," as the Board stated. In addition, it was reasonable for the Board to conclude that petitioner's other institutional activities or lack thereof failed to demonstrate an enhanced ability to function within the law if released. Petitioner completed no vocational certifications during his lengthy incarceration. His participation in self-help programming was limited to two programs, one in 1987 and another in 1996. Petitioner had no recent self-help or other program participation nor had he undertaken any independent reading of self-help books despite having been requested to do so by previous panels of the Board.

Petitioner's failure to participate in prison programming including self-help programming is relevant to a determination of his current or future dangerousness in light of the extremely violent nature of his crime and evidence in the record that he has failed to gain insight into his offense. Petitioner told the 2007 panel of the Board that he and the victim had an argument about money and that she hit him with her purse but that he had no idea what caused him to escalate such a situation into murder.

There was also some indication in the record that petitioner still had difficulty controlling his anger and impulses at times. While the presiding commissioner was reading the panel's decision to deny parole at the 2007 hearing, petitioner had an outburst, stating "I'm out of here. Let me out of the -- " after which it was noted that petitioner had jumped up and left the hearing room. (Pet. Ex. 2 at 59-60.) Shortly after his exit, the Board concluded:

> This inmate has demonstrated no insight to this Panel.  He says he has no idea why he committed this commitment offense.  Part and parcel of parole suitability is understanding the nature and magnitude of the commitment offense and [to have] no idea why he committed this offense after so many years, over 30 years in prison, is inexplicable to this Panel.  This inmate has not made any effort we know of to discover why he did this alarming crime and it is alarming because it was out of character for the rest of his relationship with this woman and he should be alarmed that he even committed it.  For him to have so much anger today that he cannot even sit here and listen to some recommendations from a Panel that has been very welcoming to him the entire hearing proceedings shows that he, in fact, still has severe anger issues that he has not dealt with...  He apparently, has been harboring these for a long period of time...  Also, he does not take any self help therapy that's been recommended to him even though he apparently has sufficient time to do at least reading...  This inmate also does appear to have given different version of this crime at different times in his life and although he is an elderly gentleman at this point, 70 years old, he does appear to be in reasonable health and he certainly would be capable of committing another crime so we feel at this point this inmate's lack of understanding of the crime and the lack of self help indicate that he needs a substantial period of time to come to, come to grips with what he has done and show [ ] future Panels that, in fact, he is safe to return to society...

(Pet. Ex. 5 at 60-62.)

A prisoner's remorse or demonstrated understanding of the nature and magnitude of the commitment offense is factor tending to indicate the prisoner is suitable for release.  15 Cal. Code Regs. §2402(d)(3).  The Board is likewise authorized to consider evidence that a prisoner lacks remorse, understanding or insight under section 2402(b) ("The Board is directed to consider all relevant, reliable information available regarding... past and present attitude toward the crime... and any other information which bears on the prisoner's suitability for release.")  Petitioner's failure to participate in prison programming including self-help was a factor properly considered by the Board, as was his apparent lack of insight into the commitment offense.

On this record, there is some evidence to support the Board's conclusion that petitioner was not suitable for parole at the time of his 2007 suitability hearing.  *See In re Shaputis*, 44 Cal.4th at 1261 n.20 ("petitioner's failure to take full responsibility for past violence, and his lack of insight into his behavior, establish that the circumstances of petitioner's

9

crime and violent background *continue* to be probative to the issue of his *current* dangerousness.") The Board's denial of parole meets the minimally stringent "some evidence" standard and has not violated petitioner's right to due process of law.

## V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 24, 2010

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE